**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Trina Gay Scherer, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-02621 |
| | § | |
| Nancy A. Berryhill, | § | |
| *Acting Commissioner of the Social* | § | |
| *Security Administration* | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Plaintiff Trina Gay Scherer appeals the Social Security Administration Commissioner's final decision denying her application for social security benefits. (D.E. 1.) Pending before the court is Plaintiff's Motion for Summary Judgment (D.E. 12) and Defendant's Cross-Motion for Summary Judgment. (D.E. 14.) Having carefully considered the motions, filings, and applicable law, the court affirms the final decision of the Commissioner.

**1. Procedural Posture**

Scherer applied for disability insurance benefits on November 9, 2015. She claimed to suffer from physical and mental impairments with an onset date of August 27, 2015. After her application was denied on an initial review and on reconsideration, Scherer requested a hearing.

The hearing was held on March 31, 2017. The ALJ issued a decision on July 24, 2017, finding Scherer not disabled. The Appeals Council denied Scherer's request for review on May 15, 2018. Scherer filed this complaint in federal court to appeal the ALJ's decision.

**2. Legal Standards**

**A. Five-Step Process**

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b) (2017). A person who is

working and engaging in substantial gainful activity is not disabled, regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

At step two, the ALJ determines whether any of the claimant's impairments is severe, irrespective of age, education, or work experience. 20 C.F.R. § 404.1520(c) (2017). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). A person who does not have a severe impairment is not disabled. *Wren*, 925 F.2d at 125.

The ALJ next determines, at step three, if the claimant's severe impairments "meet[] or equal[] a listed impairment in appendix 1." 20 C.F.R. § 404.1520(d) (2017); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (2017) (the "Listings"). If all the criteria of a Listing are met, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2017).

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e) (2017). An RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (quoting 20 C.F.R. § 404.1545(a)(1)).

3

At step four, the RFC is used to determine whether the claimant can perform past relevant work. *Perez*, 415 F.3d at 462. If the claimant can perform their past work, the claimant is not disabled. 20 C.F.R. § 404.1520(f) (2017). If not, the ALJ proceeds to step five. 20 C.F.R. § 404.1520(g)(1) (2017).

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Perez*, 415 F.3d at 462. If the claimant can perform other work available in the national economy, the claimant is not disabled.

**B. Substantial Evidence Standard of Review**

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* The reviewing court is required to examine the record as a whole to determine whether substantial evidence supported the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

## 3. ALJ's Decision and Administrative Records

### A. Hearing

At Scherer's hearing, the ALJ heard testimony from Scherer, medical expert Dr. Philip Sydney Bentlif, and a vocational expert. (Tr. 35.) Dr. Bentlif testified about Scherer's impairments from June 24, 2016, to March 31, 2017. (Tr. 40.) He testified that Scherer has a spine disorder with disc protrusions at lumbar regions four and five (the lowest vertebrae of the spine) with impingement on the left fifth lumbar nerve. (Tr. 41.) Dr. Bentlif testified that Scherer had a previous laminectomy, a surgery meant to relieve pressure on the spinal cord, of spinal regions L5 to S1. (Tr. 41.) He testified that Scherer was diagnosed with cervical spondylopathy with radiculopathy (spinal degeneration), a degree of ataxia (lack of muscle control), and postural imbalance. (Tr. 41.) Dr. Bentlif testified that Scherer's spine disorders did not meet or equal Listing 1.04A. (Tr. 42.)

He testified that Scherer could (1) never climb ladders and scaffolds; (2) occasionally climb stairs and use ramps; and (3) occasionally crouch, kneel, and crawl. (Tr. 43–45.) Dr. Bentlif testified that Scherer could during an eight-hour workday "sit six hours, and be on her feet for four hours." (Tr. 45.) He noted her imbalance meant she could not be exposed to "unprotected heights or mechanical parts." (Tr. 45.)

Dr. Bentlif reviewed the RFC proposed by Scherer's treating physician, Dr. Lee Pollack. (Tr. 48.) Dr. Pollack found limitations with "grasping," "fine manipulation," and "reaching." (Tr. 439.) Dr. Bentlif testified that those limitations were not supported by the record. (Tr. 48.) At first, he did not agree with Dr. Pollack's statement that Scherer "was less than sedentary." (Tr. 51.) He believed that she could handle "light activities of up to ten pounds frequently" and eleven to twenty-five pounds occasionally. (Tr. 43.) After cross-examination by Scherer's attorney, however, Dr. Bentlif changed his opinion to more closely align with Dr. Pollack's findings. (Tr. 49.) He ultimately stated that, considering all the evidence, Scherer "could handle [ten] pounds frequently and on the low side of [eleven] to [twenty] pounds," perhaps a maximum of twelve or thirteen pounds, "occasionally." (Tr. 51–52.) At one point he testified that he thought she might be more properly classified as "sedentary" rather than "light," with capacity to lift ten pounds occasionally at most. (Tr. 49.)

Scherer testified that she could not work due to her back pain. (Tr. 54–57.) She testified that she took "Tramadol as a pain medication" and uses a "medication patch of Butrans." (Tr. 57.) She testified she could comfortably lift fifteen pounds, but not for a third of an eight-hour day, and could lift ten pounds for a third of an eight-hour day. She testified that she could stand for fifteen to twenty minutes at a time. (Tr. 60.)

The vocational expert testified that a person with Scherer's RFC could work light unskilled jobs as an office cleaner, ticket seller, and assembler. (Tr. 71–72.) The vocational expert testified that at the sedentary exertional level there were jobs that she could perform available in the national economy, such as procurement clerk, order clerk, and checker. (Tr. 72–73.)

**B. Analysis**

The ALJ issued his decision on July 24, 2017, finding Scherer was not disabled from August 27, 2015 to July 24, 2017. (Tr. 28.) The ALJ followed the correct legal rules, and his findings are supported by substantial evidence.

*i. Step One*

At step one, the ALJ correctly found Scherer had not engaged in substantial gainful activity since the alleged onset date of August 27, 2015. (Tr. 19.)

*ii. Step Two*

At step two, the ALJ found Scherer's degenerative disc disease and obesity to be severe impairments. (Tr. 20.) The ALJ found that Scherer's hypertension, hyperlipidemia (high cholesterol), gastro-esophageal reflux disease (GERD, or acid reflux), tension headaches, depression, and anxiety were not severe. (Tr. 20.) The ALJ did not find Scherer to have any symptoms affecting her ability to reach, handle, or grasp. (Tr. 21.)

7

The ALJ relied on appointment summaries by Dr. Patricia Thompson at the Tomball Regional Medical Center and Dr. Lee Pollack at the Woodlands/Spring Neuro-Diagnostic Center, and Dr. Bentlif's hearing testimony. (Tr. 20–21.) The court's independent review of the record reveals that the ALJ's determination was supported by substantial evidence. (Tr. 336–37, 360–68, 370–75, 488–95).

*iii. Step Three*

At step three, the ALJ found that none of Scherer's impairments were medically equivalent to a Listing. (Tr. 23.) The ALJ appropriately considered Listing 1.04. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.04. (Tr. 23.) Dr. Bentlif testified in the hearing that none of Scherer's impairments were medically equivalent to a Listing and that the record did not support such a finding. (Tr. 42–43.) This finding was supported by substantial evidence and was not in error.

*iv. RFC*

Before turning to the final two steps of the analysis, the ALJ determined that Scherer had the RFC to:

> [L]ift, carry, push, or pull fifteen pounds occasionally and ten pounds frequently; stand or walk for a combined total of four hours in an eight-hour workday with normal breaks; and sit six hours in an eight-hour workday with normal breaks. The work may not require climbing ropes, ladders, or scaffolds and is limited to occasionally climbing ramps or stairs. Additionally, the work is limited to occasional balancing, stooping, kneeling, crouching or crawling. Further, the work may not be at unprotected heights or in the presence of dangerous moving machinery

or vibration and is limited to occasionally operating a motor vehicle. As well, the work is limited to occasional exposure to humidity and wetness as well as occasional exposure to dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat.

(Tr. 23.) In reaching this finding, the ALJ considered Scherer's medical records from her treatment by Dr. Pollack, Dr. Patricia Thompson at the Tomball Regional Medical Center, and Jamie Marshall at Quality of Life Chiropractic. (Tr. 23–26.) He also considered the hearing testimony of Scherer and a medical expert. (Tr. 24–26. The ALJ appropriately considered the combined effects of all Scherer's impairments, both severe and non-severe, including obesity, in determining her residual functional capacity. (Tr. 23.)

Scherer testified that that she can lift fifteen pounds for less than a third of the day and could lift ten pounds for a third of the day. (Tr. 59–60.)

The ALJ found that the record disclosed no evidence of manipulative limitation. (Tr. 21.) Dr. Bentlif corroborated this finding in his hearing testimony. (Tr. 48–49.) Dr. Pollack found that Scherer's neurological systems were negative for weakness or paresthesias ("pins and needles"), and that Scherer had normal gait and full strength in August 2015—at the beginning of the claimed disability period. (Tr. 366, 368.) Dr. Patricia Thompson at the Tomball Regional Medical Center reported normal musculoskeletal and neurological function in December 2015. (Tr. 357.)

In May 2016, Scherer told Dr. Pollack that she did not wish to undergo surgery in part because she was able to conduct her activities of daily living despite pain. (Tr. 409–10.) Dr. Pollack's clinical evaluations between September 2014 and January 2017 consistently reflected normal muscle strength, full painless range of motion of all major muscle groups and joints, and normal motor functions. (Tr. 363, 368, 373, 377, 381, 385, 409–10, 491, 497.) Scherer's treatment records consistently "reflect normal musculoskeletal and neurological function." (Tr. 337, 363, 409–10, 491, 501.) The ALJ found that Scherer's treatment records reflected no symptoms affecting Scherer's abilities to "reach, handle, or grasp". (Tr. 21.) The court's independent review reveals that the record supports that conclusion. (Tr. 336–37, 362–63, 408–10, 417, 497, 501.)

The ALJ's RFC determination was supported by substantial evidence.

*v. Step Four*

At step four, the ALJ found Scherer had no past relevant work to which she could return. (Tr. 27.) At the hearing, the vocational expert compared Scherer's profile to the requirements for the occupations Scherer had before her claimed disability date, as defined in the Dictionary of Occupational Titles. (Tr. 70–71.) The ALJ based his finding on the vocational expert's testimony. (Tr. 27.) The court finds that the ALJ's determinations at step four are supported by substantial evidence and are not in error.

*vi. Step Five*

At step five, the ALJ found that there were jobs in significant numbers in the national economy that Scherer could perform, and therefore she was not disabled. (Tr. 27–28.) At the hearing, the vocational expert testified that an individual with Scherer's age, education, work experience, and RFC would be able to perform the requirements of light, unskilled occupations. (Tr. 72.) Specifically, Scherer could work as a cleaner, a ticket seller, and a small products assembler. (Tr. 72.) The court finds that the ALJ's determination at step five is supported by substantial evidence and is not in error.

**4. Scherer's Arguments**

**A. Credibility Determinations**

Scherer argues that the ALJ improperly accorded limited weight to the opinions of Dr. Lee Pollack, Scherer's treating physician, and Dr. Bentlif, the medical examiner. (D.E. 13 at 13.) The ALJ accorded the opinions limited weight because they were inconsistent with the treatment records. (Tr. 26.) This court finds that the ALJ followed the correct legal rules in evaluating these opinions and that his credibility determinations are supported by substantial evidence.

The ALJ determines how much weight to give a treating physician's medical opinions. *Newton*, 209 F.3d at 455. The ALJ will give the opinions controlling weight if they are well supported by medically acceptable diagnostic techniques and

not inconsistent with substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2) (2017); *Newton*, 209 F.3d at 455.

If the ALJ determines that the treating physician's opinions should not be given controlling weight, the ALJ decides how much weight, if any, to give to the opinions by considering the factors under 20 C.F.R. § 404.1527(c). Those factors are (1) the length and frequency of the treatment relationship, (2) the nature and extent of the relationship, (3) the supportability of the doctor's findings, (4) the consistency of the findings with the rest of the record, (5) the physician's level of specialization, and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(2)–(6) (2017). The ALJ need not expressly consider all Section 404.1527(c) factors in deciding to discount a treating physician's opinion. *E.g., Jones v. Astrue*, 821 F. Supp. 2d 842, 852 (N.D. Tex. 2011).

### i. *Treating Physician, Dr. Pollack*

Dr. Pollack found that Scherer could occasionally lift less than ten pounds and never lift ten pounds or more. (Tr. 439.) He found that, during an eight-hour workday, Scherer's impairments would often impact Scherer's attention and concentration and require unscheduled breaks. (Tr. 439.) Dr. Pollack found that Scherer's impairments caused a fifty percent reduction in capacity to grasp, turn, and twist her right hand. (Tr. 439.) He found a sixty percent reduction in fine manipulation with the fingers in Scherer's right hand. (Tr. 439.) He also found

Scherer would likely be absent more than four times a month due to her impairments. (Tr. 440.)

The ALJ gave Dr. Pollack's opinion limited weight because his "findings of broad and sweeping limitation" were inconsistent with Dr. Pollack's own clinical evaluations and with Scherer's statements during treatment and in the hearing. (Tr. 439–41.) Scherer argues that Dr. Pollack's assessment bound the ALJ to find that Scherer is less capable of lifting than the RFC suggested.

Applying the Section 404.1527 factors, the court finds that the record supports the ALJ's assessment. Dr. Pollack is a specialist who treated or examined Scherer at about sixteen appointments every two to four months between September 2014, and January 2017. (Tr. 360–493.) While these facts favor crediting his opinion more strongly, the balance of the Section 404.1527 factors supported the ALJ's overall assessment of Dr. Pollack's opinion.

The ALJ considered inconsistencies between Dr. Pollack's conclusions and his own treatment records. Again, Dr. Pollack's clinical evaluations consistently reflect normal muscle strength, a full painless range of motion of all major muscle groups and joints, normal motor functions, "normal musculoskeletal and neurological function," and no hindrances to reaching, handling, or grasping. (Tr. 21, 336–37, 362–63, 368, 373, 377, 381, 385, 408–10, 417, 491, 497, 501.)

The ALJ also found that Dr. Pollack's opinion was inconsistent with Scherer's statements. At the hearing, she testified that she could comfortably lift fifteen pounds for up to a third of an eight-hour day, and could lift ten pounds for a third of an eight-hour day. (Tr. 59–60.) Scherer told Dr. Pollack that she could perform her activities of daily living (Tr. 410), and she reported improvement in her alleged symptoms with treatment. (Tr. 481, 492.)

The ALJ noted that Dr. Pollack specializes in neurology. (Tr. 21). While this factor favors Scherer, the balance of the Section 404.1527 factors support the ALJ's assessment of Dr. Pollack's opinion. Based on an independent review of the record, the court finds that the ALJ's decision to accord Dr. Pollack's assessment limited weight was supported by substantial evidence and was not in error.

## ii. Medical Expert, Dr. Bentlif

The ALJ's decision to accord Dr. Bentlif's opinion limited weight is supported by the record. Dr. Bentlif's initial opinion changed after Scherer's attorney cross-examined him about Dr. Pollack's medical opinions. (Tr. 48–52.) The ALJ gave Dr. Bentlif's opinions limited weight because his opinion was based primarily on Dr. Pollack's assessment, which the ALJ also accorded limited weight. (Tr. 26.) Again, the ALJ's decision to accord Dr. Pollack's opinion limited weight was supported by substantial evidence. This court finds, in turn, that the ALJ's

14

decision to grant limited weight to Dr. Bentlif's opinion was also supported by substantial evidence.

**B. Failure to Develop Record**

Scherer argues that the ALJ failed to properly develop the record by not requesting further examination or imaging. (D.E. 13 at 18.) She argues that a consultative exam or a new MRI would have led the ALJ to find "further upper extremity limitation." (D.E. 13 at 18.) She argues that the record indicates there was an MRI in May 2015 that showed "mild to moderate foraminal stenosis [or tightening of the spine] at the C5-C6 level." (D.E. 13 at 17.) As the ALJ noted, "the actual report is not in the record." (Tr. 21.) Scherer argues that if the ALJ had considered that MRI, he would have determined that Scherer's lifting ability was more limited than that reflected in her ultimate RFC. The court finds that the ALJ did not commit legal error by declining to further develop the record.

The responsibility to determine whether a claimant is disabled is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2017). Therefore, an ALJ can interpret medical evidence to determine whether the claimant's impairments prohibit him from obtaining employment. *See Taylor v. Astrue*, 480 F. App'x 302, 304 (5th Cir. 2012). The decision to obtain an additional expert examination is solely within the ALJ's discretion unless the record establishes that another examination is necessary. *See Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir.

2015). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (cited in *Manzano v. Berryhill*, Civ. Action No. 16-3496, 2018 WL 1518558, at *9 (S.D. Tex. Mar. 28, 2018)).

The court finds that the ALJ was not required to further develop the record. The evidence was not ambiguous, and the record allowed for proper evaluation of the evidence. There was ample record evidence for the ALJ to make a disability determination, including months of medical records and Scherer's testimony. Again, Scherer's doctor consistently reported that she had normal gait and musculoskeletal functions and full painless range of motion. (Tr. 337, 360–83, 406, 439–40, 488.) Scherer testified to the ALJ that she could comfortably lift fifteen pounds for up to a third of an eight-hour day and could lift ten pounds for a third of an eight-hour day. (Tr. 59–60.) Scherer's physical evaluations took place from a few months after the May 2015 MRI to the beginning of 2017, providing substantial evidence for the ALJ to discredit Scherer's claims of upper mobility limitations due to foraminal stenosis. Based on those findings, the ALJ concluded that Scherer's impairments were a minimal limitation on her ability to work. (Tr. 25)

Scherer argues that the ALJ should have ordered a new MRI based on Dr. Bentlif's testimony. (D.E. 13 at 9.) The ALJ accorded Dr. Bentlif's opinion limited

weight. As discussed above, that credibility determination was supported by substantial evidence. Therefore, the court finds that Dr. Bentlif's testimony did not require the ALJ to further develop the record.

The ALJ's decision not to order further examination was not in error and was supported by substantial evidence.

## 5. Conclusion

The court's review of the administrative record reveals that substantial evidence supports the ALJ's findings at each of the five sequential steps. Therefore, the ALJ's decision denying Social Security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the Court GRANTS Defendant's cross-motion for summary judgment, and DENIES Scherer's motion for summary judgment.

Signed at Houston, Texas on August 2, 2019.

_____
Peter Bray
United States Magistrate Judge